UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| LORRAINE MARIE AVILA, | Case No. 1:17-cv-00420-EPG |
|---|---|
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security[1] | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Lorraine Avila seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[2]

## II. BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was 51 years old at the time of her hearing before the Social Security Administration. AR 38. She completed her education through the eleventh grade, but does not

---

[1] Consistent with Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the new acting Commissioner of Social Security, is substituted in place of Carolyn W. Colvin.
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 4, 6.) The parties initially submitted their briefs to Magistrate Judge Kendall J. Newman before the case was transferred to Magistrate Judge Erica P. Grosjean on March 23, 2017. (ECF No. 15.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

have a GED or any vocational training. AR 42. Plaintiff most recently worked as a housekeeper and waitress in 2010 but left after working caused her hands to "swell[ ] up." AR 43. Plaintiff is 5'7" and weighs 211 pounds. AR 39. She lives in a house with her husband and two Chihuahuas. AR 39. Her daily activities include walking around her neighborhood, watching TV, and napping. AR 57-58.

Plaintiff's alleged conditions are pain and numbness in her neck, left shoulder, arm, hand, and middle fingers. AR 216. On March 30, 2012, Plaintiff filed an application for disability insurance benefits under Title II, alleging a disability beginning on December 4, 2008. AR 185-188. The application was denied initially on November 5, 2012 and on reconsideration on May 6, 2013. AR 121-125, 132-137. Plaintiff filed a request for a hearing on May 14, 2013. AR 138-139. The hearing was then conducted before Administrative Law Judge Cynthia Floyd (the "ALJ") on July 2, 2014. AR 27-46. On August 29, 2014, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 27. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied the appeal, rendering the ALJ's order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges that decision, arguing that: (1) The ALJ failed to obtain an explanation for the vocational expert's deviation from the Dictionary of Occupational Titles ("DOT"); (2) the ALJ incorrectly found Plaintiff not credible; and, (3) the ALJ rejected the opinion of treating physician Jacqueline De Castro.

Defendant contests Plaintiff's assessment, pointing out that: (1) The ALJ was within her discretion to erode the number of positions available in the national economy to account for any deviations from the DOT; (2) clear and convincing evidence in the record demonstrated that Plaintiff was not credible; and, (3) the ALJ correctly rejected Dr. De Castro's opinion because it was inconsistent with her own notes and with other medical evidence in the record.

### III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527, 404.1529.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform her past relevant work;[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 19-27. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 4, 2008, the date specified in her application. AR 21. Further, the ALJ identified status post C5-C7

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

anterior plate and screw fusion/fixation; central canal stenosis at C5-C6 and C6-C7; cervical spondylotic myelopathy; cervical spondylosis; cervical spinal cord nerve root compression; and hip bursitis as a medically determinable combination of impairments. AR 21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 22.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to:

> [L]ift and carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and walk up to six hours, and sit up to six hours in an eight-hour workday. She can frequently balance and crouch, and occasionally stoop, kneel, crawl, and climb ramps or stairs, but should never climb ladders, ropes, or scaffolds. The claimant is also limited to occasionally reaching overhead bilaterally. She is further limited to occasionally handling, fingering, and feeling with the left upper extremity, but can frequently perform these tasks with the right upper extremity. The claimant is capable of performing tasks which do not require repetitive rotation, extension, or flexion of the neck and she must avoid concentrated exposure to extreme temperatures, wetness, humidity, vibrations, and such workplace hazards as fast unprotected moving machinery, unprotected heights, and uneven or slippery terrain.

AR 22. Plaintiff was not capable of performing her past relevant work. AR 25. Plaintiff could, however, perform work as a cashier, information clerk, or parking lot attendant, jobs that exist in significant numbers in the national economy. AR 26.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

///

///

4

## V. DISCUSSION

### A. The ALJ's Deviations from the DOT

At step five of the disability analysis, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1520(g). To do so, the ALJ first assesses a claimant's "residual functional capacity," defined as the most that a claimant can do despite the "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. § 404.1545. The ALJ then considers potential occupations that the claimant may be able to perform by looking to the DOT, which is the Social Security Administration's "primary source of reliable job information" regarding jobs that exist in the national economy. *Zavalin v. Colvin*, 778 F. 3d 842 (9th Cir. 2015) *citing Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also* 20 C.F.R.§§ 404.1569; 404.1566(d). The DOT describes the requirements for each listed occupation, including both physical and mental requirements. In addition to the DOT, the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of her residual functional capacity. 20 C.F.R. § 404.1566(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Finally, to conclude the step five analysis, the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy." *Valentine*, 574 F.3d at 689; *see also* 20 C.F.R. § 404.1520(g).

Plaintiff contends that the ALJ departed from the guidelines set by the DOT when the ALJ found that Plaintiff could perform the job duties required for a cashier, information clerk, or parking lot attendant. Specifically, Plaintiff contends that these jobs all require "frequent reaching," while Plaintiff's RFC is limited to "occasionally reaching overhead bilaterally." The ALJ does not explain this discrepancy, Plaintiff argues, and has thus committed clear legal error.

#### *i. Legal standards*

When a vocational expert testifies "about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that . . .

evidence and information provided in the [*Dictionary of Occupational Titles*]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), *quoting* SSR 00-4p (emphasis in original). If there is a conflict between the vocational expert's testimony and the requirements in the DOT, the ALJ must "obtain a reasonable explanation" for that conflict. *Id.* at 1153. Any such explanation must be supported by "persuasive evidence" in the record. *Id.* Thus, in examining vocational expert testimony in conjunction with the DOT, an ALJ must "first determine whether a conflict exists." *Id*. "If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.* Where an ALJ fails to ask if the vocational expert's testimony conflicts with the DOT, the ALJ has erred. *Id.*

### ii. Analysis

The vocational expert testified that Plaintiff could perform the functions of a cashier, information clerk, or parking lot attendant. AR 26. The only deviation from the DOT that Plaintiff highlights is that all three jobs require frequent reaching, which the Plaintiff cannot do. Plaintiff is correct that all three positions do, in fact, require the individual to engage in frequent reaching. 211.462-010 CASHIER II, DICOT 211.462-010; 237.367-018 INFORMATION CLERK, DICOT 237.367-018; 915.473-010 PARKING-LOT ATTENDANT, DICOT 915.473-010. Plaintiff is also correct that her RFC does not allow frequent reaching. AR 22.

In her decision, the ALJ does not acknowledge that there is an inconsistency with the DOT. AR 26 ("Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*."). Nor did the vocational expert at the hearing note any inconsistency. AR 74 ("Q. Okay. Thank you very much. And is your testimony consistent with the DOT? A. Unless otherwise indicated, yes."). The ALJ thus never elicited any explanation, reasonable or otherwise, for the vocational expert's deviation from the DOT.

Defendant contends that Plaintiff waived this issue because she failed to raise it before the ALJ. But this would effectively shift the burden of obtaining an explanation for the deviation to Plaintiff, rather than the ALJ, which is contrary to the controlling case law. It would also place

6

Plaintiff in the difficult position at her hearing of objecting to vocational expert testimony based on an RFC that the ALJ has not yet announced or formulated. Moreover, Plaintiff objected to the discrepancy between the vocational expert's testimony and the DOT in a letter to the Appeals Council. AR 274 ("The Administrative Law Judge erred in finding that the vocational expert's testimony was consistent with the information contained in the DOT."). The issue is not waived. *Murry v. Colvin*, Case No. 1:14-cv-01349-JLT, 2016 WL 393859, at *5 (E.D. Cal. Feb. 2, 2016); *Davis v. Colvin*, Case No. 3:14-cv-00271-PK, 2015 WL 2218386, at *7 (D. Or. May 9, 2015) ("I find *Meanel's* exhaustion preservation holding inapplicable to the present case. Here, Davis simply argues that the ALJ erred in constructing his hypothetical for the VE and failed to completely account for mental and social limitations described in a medical opinion to which the ALJ assigned substantial weight in an opinion produced only *after* the hearing. The Commissioner's argument logically fails.").

Defendant also contends that the vocational expert did not deviate from the DOT because the expert eroded the number of positions that Plaintiff could perform in each of the designated jobs to account for Plaintiff's difficulties in reaching. Defendant is correct that the ALJ eroded the number of jobs available in her decision. However, the hearing transcript makes clear that the numbers were eroded based on: (1) Plaintiff's need for a stool; and (2) Plaintiff's "occasional handling, fingering, and feeling with the left upper extremity" limitation. AR 74-75. There is no indication that the numbers were eroded to account for the inability to frequently reach. Thus, even if the ALJ could have eroded the available jobs to account for the vocational expert's deviation, she does not appear to have done so in this instance. The ALJ's decision contains clear legal error because it fails to offer a reasonable explanation for its departures from the DOT.

**B. The ALJ's Treatment of Jacqueline De Castro's Medical Opinion**

*i. Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to

know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject the *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), but the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

### ii. Analysis

Dr. De Castro was a treating physician who saw Plaintiff between July 2011 and April 2014. AR 518, 691. On December 14, 2012, Dr. De Castro filled out a medical source statement that explained that Plaintiff could: lift/carry 3 pounds occasionally; stand/walk 1 hour in an 8 hour workday; sit for 30 minutes in an 8 hour workday; never climb, stoop, kneel, crouch, or crawl; occasionally balance; never reach, handle, or finger with her left arm; occasionally reach and handle with her right arm; and, frequently finger with her right arm. AR 556-557. The ALJ rejected a portion of Dr. De Castro's findings, saying that:

> The undersigned discounts this opinion and gives it less than full weight because it is overreaching and without sufficient support from the objective medical evidence and clinical data. The undersigned agrees that the claimant has some exertional, postural and environmental limitations, but not to the extent opined by Dr. De Castro. For example, the extensive limitations assessed by Dr. De Castro are inconsistent with the other evidence, which showed full motor strength in the bilateral upper extremities, and a stable gait. The significant manipulative limitations are also inconsistent with the record, which indicated the claimant has no difficulty buttoning clothing and has had no changes in her handwriting. Furthermore, the opinion is inconsistent with the other medical opinions of record.

8

AR 24 (internal citations omitted).

Plaintiff contends that the ALJ erred in rejecting these portions of Dr. De Castro's opinion because the ALJ mischaracterized the other medical evidence in the record. Plaintiff claims that the medical evidence in the record is actually supportive of Dr. De Castro's opinion. Defendant points to examinations by Parley Madsen, M.D., who found that Plaintiff had a normal gait and full strength in her extremities. Defendant also points out that the ALJ rejected Dr. De Castro's opinion for its inconsistency with Plaintiff's normal activities, including her ability to button clothing.

An examining physician's opinion can constitute substantial evidence to reject a treating physician's opinion if the examining physician's opinion "rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Madsen conducted physical examinations of Plaintiff on at least two occasions in 2013. AR 676-680, 681-687. In both of these examinations, Dr. Madsen appears to have found results that are not entirely consistent with the limitations Dr. De Castro assesses. For instance, Dr. Madsen observed that Plaintiff was "able to ambulate without an assistive device," had a "normal base to her gait," and had a stance within normal limits. AR 684. Although she had a decreased range of motion in her upper extremities, Plaintiff had 5/5 motor strength in her arms and hands and had "fine motor movements of the distal upper extremities [ ] within normal limits." AR 685. These findings are inconsistent with Dr. De Castro's opinion that Plaintiff is unable to stand/walk for more than 1 hour and has significant limitations on her ability to reach, handle, and finger.

Dr. Madsen's records do not appear to support Dr. De Castro's conclusion regarding the impairments and limitations that Plaintiff possesses. The ALJ had the authority to resolve this conflict in arriving at her decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony."); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions falls with the ALJ's responsibilities). "If the ALJ's finding is supported by substantial evidence, the court 'may not

engage in second-guessing.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Dr. Madsen's findings rest on physical examinations independent of Dr. De Castro's. And, as Defendant points out, many other medical providers (including Dr. De Castro) also found that Plaintiff had a normal gait and full strength in her extremities. On February 27, 2014, for example, Dr. De Castro conducted a physical examination and found that Plaintiff had 5/5 strength in her upper and lower extremities, as well as a stable gait. AR 697. It was thus within the ALJ's authority to give little weight to Dr. De Castro's opinion based on its inconsistency with the record.

Moreover, the ALJ rejected Dr. De Castro's findings because they were inconsistent with Plaintiff's daily activities. A Plaintiff's daily activities can also constitute a specific and legitimate reason to reject a medical opinion where the daily activities are inconsistent with that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Although there is only one reference in the record to Plaintiff's ability to button clothing and her handwriting, that reference does contradict Dr. De Castro's opinion regarding Plaintiff's fine motor skills. The ALJ was not in error in giving Dr. De Castro little weight.

**C. The ALJ's Evaluation of Plaintiff's Credibility**

*i. Legal standards*

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

An ALJ can consider a variety of factors in assessing a claimant's credibility, including:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### ii. Analysis

The ALJ's decision questions Plaintiff's credibility with respect to the severity of her symptoms. AR 24. In particular, the ALJ found that:

> In this case, the claimant's allegations are not fully credible. For example, she testified to having trouble reading due to dyslexia, but that is unsupported by the medical evidence of record. The claimant further reported her ability to follow instructions and complete tasks is "affected," but that is inconsistent with the record, which showed she stayed on task during an examination and followed complex commands. She also alleged her condition worsened in December 2012, but the record does not support this. In fact, as recently as August 5, 2013, physicians recommended that continue with only conservative (non-surgical) treatment. These inconsistent and unsupported statements significantly detract from the credibility of her allegations.
>
> The claimant testified and reported having significant physical limitations, namely with regard to her neck and upper extremities, but her daily activities undermine the credibility of these allegations. For example, she admitted shampooing her hair every three days and such a task requires overhead reaching. Furthermore, she also indicated she did not require assistance with personal needs. In addition, a treatment report showed she has no trouble buttoning her clothing and she has exhibited no changes in her handwriting. These additional inconsistencies further detract from the credibility of her allegations, namely with regard to the allegation she is unable to work.

AR 25 (internal citations omitted). The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

Plaintiff challenges the ALJ's findings with respect to Plaintiff's daily activities, saying that each of the specific daily activities noted by the ALJ was only accomplished with significant accommodations. While it is true that Plaintiff shampoos her own hair, for instance, she does so only with some difficulty. AR 56. Defendant points out that Plaintiff's daily activities extend to a variety of different activities, including the ability to care for pets, perform household chores, drive a car, and shop. AR 244-247, 41-42.

A plaintiff's daily activities or inconsistencies in testimony can constitute a reason to find that she lacks credibility. *Tommasetti*, 533 F.3d at 1039. Plaintiff does acknowledge that she cares for her two Chihuahuas and is capable of driving (albeit relatively short distances). AR 41-42, 245. She also performs household chores such as dusting and laundry. AR 246. The record does, however, substantiate Plaintiff's argument that each of the activities cited by the ALJ was performed only with significant caveats. Plaintiff feeds the Chihuahuas, for example, but her husband assists when she is in pain. AR 245. She is capable of shopping, but she generally goes only with her husband. AR 247. These accommodations undercut the ALJ's finding that Plaintiff lacks credibility because of her daily activities.

On the other hand, the ALJ is correct that some of Plaintiff's statements are not supported by the medical record. Plaintiff's contention that she has limited arm mobility or use of her fingers (AR 47), for example, is contradicted by a number of physical examinations. David Broderick, M.D., for instance, who examined the Plaintiff on February 6, 2010, found Plaintiff's statement that she lacked range of motion in her left arm was not entirely accurate. AR 652 ("During the examination she has decided posturing of the left elbow, keeping it flexed, but with distraction she does have full left elbow range of motion. There is *significant symptom magnification* seen at the time of this evaluation.") (emphasis added). Dr. Broderick also suggested that the objective evidence did not support Plaintiff's assertions. AR 653 ("The applicant's clinical examination is unremarkable . . . Her MRI scan of the left shoulder was unremarkable.").

12

The Court notes, however, that an ALJ may not find a plaintiff not credible *solely* because of a lack of corroborating evidence in the record. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain"). Thus, while the Plaintiff's allegations do appear to be less than entirely consistent with the medical evidence, the Court is unable to find that the ALJ has offered clear and convincing reasons to find Plaintiff not credible. Because the case will be remanded for the above identified issue with the vocational expert's testimony, the ALJ may also wish to review the record with respect to Plaintiff's credibility and further articulate her reasoning.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record or free of clear legal error. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is REMANDED to the Social Security Administration. On remand, the Social Security Administration shall develop the record with respect to the vocational expert's testimony and the DOT. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Lorraine Avila and against Defendant Nancy A. Berryhill, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 6, 2017** /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE